(156 App. Div. 824.)

COLWELL LEAD CO. v. CONSTRUCTION MATERIAL & COAL CO.

(Supreme Court, Appellate Division, First Department. May 29, 1913.)

1. CONTRACTS (§ 269*)—BUILDING CONTRACT—AGREEMENT. TO DISCONTINUE WORK—PERSONS BETWEEN WHOM MADE.

Where a contract for the doing of plumbing work in certain buildings provided for a payment of $2,500 when the lead roughing was in, $1,000 to be paid to the contractor and $1,500 to a company furnishing him the plumbing materials, which sum was thereby assigned to such company, an agreement between the contractor and a party who guaranteed such payments, after the lead roughing was in and the materials furnished by the company, to discontinue the work upon payment to the contractor of $300 in full settlement, could not affect the right of the company furnishing the materials to the amount due it under the contract.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. § 1205; Dec. Dig. § 269.*]

2. NEW TRIAL (§ 9*)—AS TO PART OF ISSUES.

Where a complaint set out plaintiff's claim for two amounts due on a contract as one cause of action, and no motion was made to separately state and number the two causes of action, a verdict for defendant could not be separated, and allowed to stand as to one of the amounts claimed and set aside as to the other.

[Ed. Note.—For other cases, see New Trial, Cent. Dig. § 12; Dec. Dig. § 9.*]

Appeal from Trial Term, New York County.

Action by the Colwell Lead Company against the Construction Material & Coal Company to recover two amounts of $1,500 and $650, respectively, alleged to be due on a contract. From an order setting aside a verdict for defendant and granting a new trial as to the $1,500 claim, defendant appeals. From so much of the order as denies its motion to set aside the verdict as to the $650 claim, plaintiff appeals. Modified.

Argued before INGRAHAM, P. J., and CLARKE, SCOTT, DOWLING, and HOTCHKISS, JJ.

Henry Hetkin, of Brooklyn, for plaintiff.

Thompson & Fuller, of New York City (John A. Thompson, of New York City, of counsel), for defendant.

---

*For other cases see same topic &-§ NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

CLARKE, J.   [1] The complaint alleges that the plaintiff is a corporation engaged in the manufacture and sale of plumbing materials and plumbing fixtures; that the Gainsborough Building Company is a corporation which owned a plot of land in the borough of Brooklyn upon which it was erecting seven apartment buildings; that on or about the 30th of August, 1910, said Gainsborough Company entered into a written contract with one Abraham Sacks, by which Sacks undertook to do all the plumbing and gas fitting work in the seven buildings and to find and provide such good, proper, and sufficient materials of all kinds whatsoever as shall be proper and sufficient for the completing and finishing of said plumbing work. The price of the said labor and materials was to be $18,200, to be paid as follows:

"When the iron roughing is in and sewers are connected, the sum of $3,850 by paying $1,500 of same to the party of the second part and the sum of $2,350 to Colwell Lead Company at Lafayette and Walker streets, Manhattan, which sum of $2,350 is hereby assigned by the party of the second part to the said Colwell Lead Company, and said payment must be made direct to said Colwell Lead Company without further notice. When lead roughing is in, the sum of $2,500 by paying $1,000 of same to the party of the second part and the sum of $1,500 to Colwell Lead Company at Lafayette and Walker streets, Manhattan, which sum of $1,500 is hereby assigned by the party of the second part to the said Colwell Lead Company and said payment must be made direct to said Colwell Lead Company without further notice," and further provisions for payment in the same fashion at different stages of the work.

It is further alleged that simultaneously with the execution of said contract the defendant executed and delivered a written guaranty to Sacks and the plaintiff, guaranteeing the first payment mentioned in the within contract, $3,850, which sum the defendant afterwards paid; that for the purpose of inducing Sacks to enter into the said written agreement with the Gainsborough Building Company and for the purpose of inducing the Colwell Lead Company to sell and deliver plumbing materials and fixtures for the premises of said Gainsborough Building Company, and by reason of the interest that defendant had in said premises and in the completion thereof—the Gainsborough Company being indebted to the defendant in large sums of money for building materials sold to it for use in the building mentioned—the defendant prior to the execution of said written agreement between Sacks and the Gainsborough Building Company, and for a valuable consideration, agreed with Sacks and the Colwell Company to guarantee the first and second payments in said agreement. Pursuant to said agreement it executed, acknowledged, and delivered under its seal its guaranty in writing which is as follows:

"For the consideration of the sum of $1 and for other valuable consideration, paid to the Construction Material & Coal Company, the undersigned, by Abraham Sacks and Colwell Lead Company, and in pursuance to an agreement had between the parties, the said Construction Material & Coal Company hereby guarantees to said Abraham Sacks and Colwell Lead Company, or either of them, the second payment, of $2,500 mentioned in a certain contract made between Abraham Sacks and Gainsborough Building Company bearing date August 30, 1910, provided, however, that all labor and materials are furnished by said Abraham Sacks and Colwell Lead Company as provided in said contract."

142 N.Y.S.—8

The complaint further alleges that thereafter the said Sacks proceeded with the performance of the contract and completed all the work mentioned to entitle him to his first payment of $3,850, which was duly paid; that he thereafter further proceeded to perform all the labor and furnish all the materials specified in said contract to entitle him to receive the second payment of $2,500, as therein designated, and did proceed with the said work until the 10th of March, 1911, when he was notified and ordered by the defendant herein to stop work on the said premises, and that like notice was given to the Gainsborough Building Company; that at the time said work was stopped the plaintiff sold and delivered on the premises aforesaid all of the plumbing material required for the lead roughing and became entitled to receive from said Gainsborough Company and the defendant under its guaranty the sum of $1,500 as specified in said contract and guaranty, and duly performed all the conditions on its part to be performed; that at the time said work was stopped Sacks duly performed all the conditions of the said contract to be performed on his part to entitle him to receive the lead roughing payment of which $1,-500 was assigned to plaintiff, and in the said contract mentioned, except a small portion of the work with reference to putting in all roughing amounting to $50 which said Sacks was ready, able, and willing to perform but unable to do so by reason of the order to stop; that at the time of the commencement of this action and for valuable consideration, said Sacks duly assigned all right, title, and interest in and to the said contract and guaranty to Abraham Sacks, Incorporated, and thereafter said corporation duly assigned its right, title, and interest in and to all sums of money due on the guaranty and contract to plaintiff; that no part of said sum of $1,500 originally assigned to Colwell Lead Company was paid, although demanded, and no part of the sum of $1,000 due to Sacks was paid except the sum of $300, leaving a balance due said Sacks on account of the second payment the sum of $700, less the sum of $50 for labor to be performed.

A stipulation was entered into upon the trial that all the allegations set forth in the complaint in each and every paragraph, except 9, 11, and 13, are admitted. The only proof to be adduced at the trial of this action by either party is with reference to the allegations contained in paragraphs 9, 11, and 13, which said allegations defendant is deemed to have denied.

On the 7th of February all the material was on the premises for the seven houses to enable Sacks to complete the work required to entitle him to the second payment. He had proceeded after the first payment and had done some work when he received a request, as he puts it, to go slow.

"And I promised Mr. Camardella that I would go slow and I would hold off for a month. * * * Then I started in on the 6th of March to finish and I put on three shifts of men. * * * No one told me to commence again. I spoke about the matter with the Colwell Lead Company and they thought it was advisable to go ahead. Q. So that you could sue the defendant, yes or no? A. We did not discuss that point, but we discussed the proposition that it would be well to complete the work and finish it so that I would be entitled to my payment."

He had almost completed when he was notified in writing on the 11th to stop. As Camardella puts it, Sacks was requested to stop work; that he said he wanted to be paid for what he had done; that it amounted to about $500 worth, and that if he received that he would stop; that after negotiations he agreed to take $300, which was paid to him, and thereupon the work ceased for a while, and when it was found that he had started up again without being requested to he was notified plainly in writing to stop.

The court left the case to the jury as follows:

"Did the defendant on or about January 6, 1911, through Mr. Camardella, its treasurer, request Mr. Sacks to cease work on the premises, and did he promise to do so if he received his pay for the work up to that time? To this question you will make answer yes or no. * * * In that connection the court instructs you that if the parties at that time mutually agreed to stop the work, and if this $300 was paid by Camardella under this arrangement, then if Mr. Sacks continued to work without a request on the part of the defendant company who had given him the notice, he did this at his peril. You see this is a very important question not only to Mr. Sacks but also to the plaintiff as well as to the defendant. * * * If you resolve all questions of fact in favor of the plaintiff and shall decide that Mr. Sacks performed his work and was not requested to stop as defendant contends, then you come to the question of amount. * * * On the other hand, if you shall find that the parties agreed at the time mentioned to stop work, and that work was stopped under that agreement, then you may find a verdict in favor of the defendant. Plaintiff's Counsel: I respectfully except to that portion of your honor's charge just mentioned, that if the jury find that on the 6th of January the conversation alleged took place and that Sacks agreed to stop work, in that case they must find a verdict in favor of the defendant; and I ask your honor to charge the jury that if the jury find that at the time, that is, on January the 6th, the time this conversation took place, or alleged conversation took place, the Colwell Lead Company delivered all of the material as called for by the contract, and that said material was on the premises at that time, that in that event there must be a verdict in the sum of $1,500 for the Colwell Lead Company."

The jury returned a verdict for the defendant and answered the questions submitted in the affirmative. In his opinion on the motion for a new trial, the court said:

"The guaranty is several and under it $1,500 was to be paid directly to the plaintiff for material furnished and $1,000 to Sacks for labor performed. So far as the Sacks claim is concerned, the jury specifically found that it was satisfied by the payment to him of the $300, and the verdict so returned terminates the issue in respect of that demand. The right of the plaintiff to the $1,500 rests upon different grounds. Under the contract that sum became payable to the plaintiff when the lead roughing was in, and under the guaranty it was to be paid provided the plaintiff furnished the materials called for by the said contract. If the lead roughing was in and the materials furnished, plaintiff was entitled to have the jury instructed that if they found such to be the fact they must find a verdict in its favor, for that sum. Sacks was not the agent of plaintiff. His agreement with the defendant's treasurer in no manner affected plaintiff's rights. The plaintiff was induced to deliver sundry plumbing materials and fixtures because the defendant guaranteed their payment, and if as guarantor it claimed the right to terminate its obligation as surety, it could only do so by dealing with the plaintiff direct."

The motion to set aside the verdict as to $1,500 was granted, and as to $650 denied. From the order entered thereon these appeals are taken.

[2] The complaint sets out plaintiff's claim in one cause of action. No motion was made to separately state and number two causes of action. Under such circumstances, we do not see how the verdict of the jury can be separated, and one part allowed to stand and the other set aside.

The defendant claims that it had the power to stop this work, and that if it did the contract was broken and no payments became due under it. It also claims that this payment of $300 was in the nature of an accord and satisfaction, and, having been paid, Sacks had no right to do any more work, and therefore no further sum became due which could be assigned to the plaintiff and give it a cause of action therefor.

The difficulty with this claim is that if it had the power to order the work stopped it had no legal right to do so. As matter of fact the work was not stopped, but suspended, and finally resumed and substantially completed. Accord and satisfaction is not pleaded. Nor is payment. Sacks certainly was not the agent of the plaintiff and could make no agreement which would interfere with its rights. The verdict should have been set aside in its entirety.

The order appealed from should be modified by providing that the verdict of the jury should be set aside and a new trial ordered, and as so modified affirmed, and, as both parties appeal, without costs to either party. All concur.